Harrison Kordestani, Esq. (S.B.N. 175220)
Kordestani Legal Partners
8033 Sunset Boulevard, STE 798
Los Angeles, CA 90046
Tel (323) 628-7150
Email: hpk@kordestanilaw.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRIAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SWANSEA INVESTMENT GROUP, INC., a New Jersey Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>RESMAC, INC., a Florida Corporation; JJ ZHANG, an individual; KEVIN HECKEMEYER, an individual; TODD LAUTZENHEISER, and individual; and Does 1 through 10, inclusive<br><br>        Defendants. | Case No.: CV-19-9319-GW-JPRx<br><br>**PLAINTIFF'S OPPOSITION TO THE MOTION TO ENFORCE THE SETTLEMENT**<br><br>Judge: Hon. George H Wu<br>Hearing date: August 24, 2020<br>Time: 8:30 a.m.<br>Dept: 9D |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**

This Opposition is based upon the complete files and records in this action, the following arguments, the Declaration of Harrison Kordestani and upon any documentary and/or oral evidence as may be presented at the time of the hearing of the Motion.

August 21, 2020

                                              */s/ Harrison P. Kordestani*

                                              Harrison P. Kordestani

Plaintiff Swansea is reluctant to formally dismiss the matter with this court, based on its position that Defendants have failed to fully perform their duties under the existing settlement agreement, and that the subject loan currently lacks the marketability to be adequate security under the settlement. The position of Plaintiff Swansea can be summarized as follows:

**1.** ***Defendants have failed to perform all duties under the agreement*:**

Apart from the payment of the one-time lump sum payment of $90,000, which was received late, the Defendants would be sending (i) servicing records and borrower information would be forwarded to Plaintiff within five (5) days; (ii) that borrower payments from February onward would be remitted to Plaintiff, less a servicing fee by Defendants; and (iii) that the Subject Loan was valued at or about $285,000.

Defendants have failed to perform to date by still not releasing borrower information or sending any of the collected mortgage payments for the loan for February, March or April, less processing fees. The settlement agreement was simply not performed by Defendants.

Further it was agreed that the subject loan would be worth $285,000. As is evidenced below in third party independent evaluations, asked for by the court, the true value of the property is at or below 70% to 83% of the stated value of $285,000. That would be an estimated loss for Plaintiff of more than $50,000.

The court can't expect that the intent of the settlement and understanding of Plaintiff at the time of contracting and signing of the settlement agreement was to have only one choice of property and to have that property not have proper borrower information and be valued at close to $50,000 less than he bargained for.

The original borrowed funds by Defendants were cash transfers from Plaintiff Swansea, and Defendants ignored their mandated and contracted repayments after constant calls, texts and emails, until the lawsuit here was instigated. The Defendants cannot be allowed to be supported

by the court in their original wrong acts, especially after Plaintiff's representative trusted them that they would provide a subject loan in the settlement that would be worth at least $285,000.

Plaintiff wishes to dismiss as long as the subject loan is replaced with suitable loan that can be objectively said to be worth $285,000.

**2.**     *Security for performance by Defendants is Inadequate:*

Swansea refutes Defendants position that the Subject Loan is adequate consideration, as well as statements by Defendants that the Subject Loan, should not be guaranteed to be valued at or about $285,000, which together with the $90,000 in cash already tendered, would satisfy Defendants debt to Swansea under the complaint at $375,000.

The settlement agreement entered into on January 25, 2020 was not some negotiation over random numbers that may or may not compensate Swansea for its loan of $375,000 to Defendants last July.  The Parties entered settlement because they wished to forgo trial, as it was irrefutable that monies were owed to Swansea, and the previous collateral that was given to Swansea for the loan was faulty, as well as never recorded, as promised by Defendants; arguments were previously made in the complaint in this matter setting forth that the first piece of the collateral was sold by Defendants and that proceeds were kept instead of paying Swansea, and the second piece of collateral was sold Defendant ResMac to Defendant Zhang, again with no proceeds given to Plaintiff.  Defendants only responded to Swansea once the lawsuit was filed, after many months of calls, emails, texts, and attempts to collect on the debt by Swansea in a civil manner, prior to involving the court.

Plaintiff's representative, Mr. Chang, and myself were presented with the Subject Loan at the time of the face to face settlement agreement, and were assured that: (i) servicing records and borrower information would be forwarded within five (5) days; (ii) that borrower payments from February forward would be remitted to Plaintiff, less a servicing fee by Defendants; and (iii) that the Subject Loan was valued at or about $285,000.  Defendants thus assured Swansea,

at the time of the settlement agreement, that the Subject Loan was 'performing,' and that it would be adequate consideration.

To begin with, Defendants only released any information on the Subject Loan nearly Forty Five (45) days after the settlement date in early March 2020. Further, Defendants did not include the 'borrower contact information,' nor the 'servicing records' when they transferred information on the Subject Loan. To this day, Swansea still has no idea of the payment history connected to this borrower in the Subject Loan.

Defendants also failed to remit the monthly borrower payments for February 2020 and March 2020 to Plaintiff, less any servicing charges by Defendants, as per the settlement agreement.

Finally, Plaintiff's representative Chang has learned from Defendant Heckemeyer, that the Subject Loan borrower has been in forbearance on the loan since April 2020.

The Subject Loan has turned out to be 'non-performing,' as the borrower on the Subject Loan has made inconsistent payments and subsequently failed to pay and is currently believed by Swansea to be in forbearance. Therefore, the loan is unmarketable and needs to be replaced for Plaintiff to agree to a dismissal. The spirit of the settlement agreement was that the Loan would have at least a market value of $285,000, with consistent payments from a borrower not in forbearance, and preferably with a leveraged coverage of '2 to 1' as between the loan and the value of the property.

On June 15, 2020, this Court directed the Parties, and specifically Plaintiff herein, to provide evidence of Plaintiff's contention that the "security" subject-property provided by Defendants as performance under the settlement agreement between the Parties is insufficient and must be replaced. In so doing, Plaintiff reached out to an independent third party source in order to validate its contention and provides the following:

**Exhibit A (Attached).** An appraisal by Mr. John Thomas Epperson, an independent third

party, which states "*Based on the characteristic provided above, with limited servicing record and loan currently in forbearance, it is opinion of this firm the value of the Note is approximately $230,300 based on 70% of original value of the property.*"

**Exhibit B (Attached).** An offer for the Property by the Kirkland Group, an independent third party, for 83*% of original value of the property*, based on the forbearance and lack of proper borrower information.

These letters from an independent third parties show that the consideration in question, Loan Number 1000053203 for 7805 Colony Lake Drive, Boynton Beach, Florida 334326 (the "Subject Loan"), is inadequate, and is not valued at or about $285,000, which together with the $90,000 in cash already tendered by Defendants, would satisfy Defendants debt to Swansea under the complaint at $375,000. The independent third party appraisals show that the Subject Loan is worth *significantly less than the proposed value of $285,000*, and hence cannot serve as proper consideration under the settlement agreement.

The consideration for the settlement agreement is lacking and needs to be replaced with a sure form of security. Swansea does not seek to waste the court's time, but only to have Defendants replace the Subject Loan with a loan that can be marketable, as per the spirit of the settlement agreement. Plaintiff Swansea also refutes the statement that either Swansea's representative, or myself, 'demanded' that the Subject Loan become the underlying loan in the settlement agreement. In fact, Swansea was given no other choices as to a collateral, except the Subject Loan, which was insisted on by Defendants.

Plaintiff Swansea only asks for the Subject Loan to be replaced with adequate consideration and wishes to otherwise abide by the settlement agreement and dismiss the case, as it thought it would when it was offered the subject loan during the settlement discussions. Otherwise Plaintiff Swansea is reluctant to formally dismiss the matter with this court, based on its position that Defendants have failed to fully perform their duties under the existing settlement

agreement, and that the subject loan currently lacks the marketability to be adequate security under the settlement.

**CONCLUSION**

WHEREAS, the Parties had agreed to settle the matter in accordance with the terms in the Settlement Agreement and Plaintiff hopes that the Parties may still settle the matter with a replacement collateral, the Court is respectfully requested to exercise its discretion to deny *Defendant*s' motion in its entirety, and the Court mandate that Defendants replace the Subject Loan with adequate collateral, at which time, Plaintiff will dismiss the case.

DATED: August 21, 2020

*/s/ Harrison Pierce Kordestani*

Harrison P. Kordestani, Esq.
*Attorneys for Defendants*

Harrison Kordestani, Esq. (S.B.N. 175220)
Kordestani Legal Partners
8033 Sunset Boulevard, STE 798
Los Angeles, CA 90046
Tel (323) 628-7150
Email: hpk@kordestanilaw.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRIAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SWANSEA INVESTMENT GROUP, INC., a New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RESMAC, INC., a Florida Corporation; JJ ZHANG, an individual; KEVIN HECKEMEYER, an individual; TODD LAUTZENHEISER, and individual; and Does 1 through 10, inclusive<br><br>Defendants. | Case No.: CV-19-9319-GW-JPRx<br><br>**DECLARATION OF HARRISON P. KORDESTANI IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE MOTION TO ENFORCE THE SETTLEMENT**<br><br>Judge: Hon. George H Wu<br><br>Hearing date: August 24, 2020<br><br>Time: 8:30 a.m.<br><br>Dept: 9D |

1

DECLARATION OF HARRISON P. KORDESTANI IN SUPPORT OF PLAINTIFF'S POSITION AS TO THE STATUS REPORT RE: SETTLEMENT

I, HARRISON P. KORDESTANI, declare as follows:

1. I am an attorney duly admitted to practice before the courts of the State of California, including the United State District Court for the Central District of California. I am the attorney of record for Plaintiff, SWANSEA INVESTMENT GROUP, INC. The facts set forth herein, and if called as a witness to testify thereto, I could competently and truthfully do so.

2. On August 20, 2020, I realized that a hearing was set for August 24, 2020 and that the Defendants had filed for a Motion to Enforce the Settlement agreement, and the court had set a tentative ruling backing the motion since an opposition had not yet been filed by Plaintiff.

3. Even though there is no excuse for my lack of knowledge of these proceedings, I would beg the court to consider these facts in reconsidering the tentative ruling, allowing me additional time in order to file a more formal and complete opposition.

4. On July 20, 2020, I found out at 6:30am that my father had died and that I was urgently needed in Fresno by my mother. My father's death certificate is attached here as Exhibit 1. I was all but holding back my tears on the hearing call with the court at 8:30am as I was numb and didn't want to just NOT call in – I went through the motions and immediately began my drive to Fresno. I have been here since because not only has my mother also lost her closest sister only a week thereafter, but she is also in need of close medical attention, and my family and I are trying to figure out next steps after she hopefully recovers soon.

5. A legal assistant I have been using for the last few months assured me that she had reached out to all opposing counsel, and as Defendants' counsel is also opposing counsel to myself in another state matter, I suppose I had assumed that counsel would have been aware of my unusual circumstances; but again I apologize to the court as I should not have assumed anything with regard

2

DECLARATION OF HARRISON P. KORDESTANI IN SUPPORT OF PLAINTIFF'S POSITION
AS TO THE STATUS REPORT RE: SETTLEMENT

to any matter.

6. As to this case, in June and July of 2020, I provided brief statements with regard to the fact that the settlement cannot be effectuated because of a lack of proper security as envisioned in the settlement agreement between the parties. The entire settlement hinged on a $90,000 which was received, but sent late by Defendants, and the subject property that is being argued herein. The settlement agreement assumed and the Defendants pledged that the property would be worth at least $285,000 as they borrowed and owed $375,000 from Plaintiff.

7. Defendant did not need to settle the case and get less than it would have been able to prove that it was owed, both in principal and interest. But it agreed to so settle because it was pledged that the property would be able to worth at least $285,000.

8. First of all the information with regard to the property was sent almost two months after the settlement agreement, after numerous requests by phone and text by Plaintiff's representative directly with Defendants, and my own requests to Mr. Westmoreland, the collateral loan/property information was received at the Plaintiff's office in New Jersey on March 18, 2020, with FedEx tracking# 770007302582.

9. Even at that time, **no borrower information** was included. This is critical as it shows the value of said property in the hands of the certain occupants/borrowers.

10. So not only was the **real value of the property/loan in question** because no borrower information was given (*and has still not been received*), on April 23, 2020, I was present and with Plaintiff's representative, Mr. Chang, when he spoke with Defendant Heckemeyer, who informed Mr. Chang that the borrower on the 'security' loan, Mr. Nguyen, had requested from Defendant ResMac, and been granted to be in **active forbearance** starting in April 2020.

3

DECLARATION OF HARRISON P. KORDESTANI IN SUPPORT OF PLAINTIFF'S POSITION
AS TO THE STATUS REPORT RE: SETTLEMENT

11. On the same day, Defendant Heckemeyer confirmed the same by text message to Mr. Chang, as well as the fact that payments for February 2020 and March 2020 were collected by Defendant ResMac, but the same was not remitted to Plaintiff, as opposed to the terms of the settlement agreement.

12. In the last hearing, Plaintiff was also able to show from third party independent sources that the value in the marketplace for the property actively is fluctuating between **70 cents to 83 cents** on the dollar. Exhibits A and B herein.

13. Plaintiff can't be expected to LOSE up to $50,000 because its representative again trusted Defendants in believing that the subject property/loan would be worth $285,000, just like he believed Defendants when they said they would pay back the original funds they borrowed with interest, without being promoted by a lawsuit, even though they run a national mortgage company and have active licenses in over 30 states. That would be UNFAIR.

14. Plaintiff is not looking to make more money, but just to meet its expectation interests – the same interests that its representative thought were the hallmark of the settlement agreement. The motion should be set aside, and the subject property/loan should be changed with one that does not cause a loss to Plaintiff, who legitimately loaned Defendants cash money and was ignored until he filed a suit in Federal court to seek justice.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. This declaration was executed on August 21, 2020, in Los Angeles, California.

                                          */s/ Harrison Kordestani*
                                          Harrison Kordestani, Esq.

DECLARATION OF HARRISON P. KORDESTANI IN SUPPORT OF PLAINTIFF'S POSITION AS TO THE STATUS REPORT RE: SETTLEMENT

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, Harrison Kordestani, am employed in Los Angeles County, California. I am over the age eighteen (18) years and am not a party to the within action. My business address is 8033 Sunset Boulevard, Suite 798, Los Angeles, California 90046.

On August 21, 2020, I served the attached **PLAINTIFF'S OPPOSITION TO MOTION TO ENFORCE THE SETTLEMENT**, on the interested parties in this action by placing a true and correct copy thereof enclosed in sealed envelope(s) with postage pre-paid thereon, addressed as follows:

Dominique Westmoreland, Esq.
1379 W. Park Western Drive, Suite 301
Los Angeles, California                    Attorney for Defendants
dwestmoreland@wml-law.com

[ ] VIA U.S. MAIL: By placing a true copy thereof enclose in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, CA. I am "readily familiar" with the firm's practice of collection and processing correspondence by mailing. Under the practice, it would be deposited with the U.S. postal service on that same day with postage fully prepaid at Los Angeles, CA in the ordinary course of business. I am aware that on a motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after of deposit for mailing.

[ ] PERSONAL SERVICE: I caused such envelope to be hand delivered to the offices of the above address.

[X] VIA EMAIL/FACSIMILE: By transmitting to an email address or facsimile machine maintained by the person on whom it is served who has agreed to accept service in such an electronic manner. The copy of the document served by email or facsimile transmission bears a notation of the date and place of transmission and the email address or fax number to which transmitted. A confirmation of the transmission containing the email address or fax number to which the document(s) was/were transmitted will be maintained with the document(s) served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was executed on August 21, 2020, at Los Angeles, CA.

/s/ Harrison Kordestani
Harrison Kordestani, Esq.

5

DECLARATION OF HARRISON P. KORDESTANI IN SUPPORT OF PLAINTIFF'S POSITION
AS TO THE STATUS REPORT RE: SETTLEMENT

# EXHIBIT 1

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY of FRESNO
### DEPARTMENT OF PUBLIC HEALTH
### FRESNO, CALIFORNIA

**STATE FILE NUMBER:** 3052020163065
**CERTIFICATE OF DEATH**
**LOCAL REGISTRATION NUMBER:** 3202010004397

### DECEDENT'S PERSONAL DATA

| Field | Value |
|---|---|
| 1. NAME OF DECEDENT – FIRST (Given) | MEHDI |
| 2. MIDDLE | – |
| 3. LAST (Family) | KORDESTANI |
| 4. DATE OF BIRTH | 10/07/1929 |
| 5. AGE Yrs. | 90 |
| 6. SEX | M |
| 9. BIRTH STATE/FOREIGN COUNTRY | IRAN |
| 10. SOCIAL SECURITY NUMBER | 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 |
| 11. EVER IN U.S. ARMED FORCES? | NO |
| 12. MARITAL STATUS | MARRIED |
| 7. DATE OF DEATH | 07/20/2020 |
| 8. HOUR (24 Hours) | 0400 |
| 13. EDUCATION | DOCTORATE |
| 14/15. HISPANIC/LATINO(A)/SPANISH? | NO |
| 16. DECEDENT'S RACE | IRANIAN |
| 17. USUAL OCCUPATION | TEACHER |
| 18. KIND OF BUSINESS OR INDUSTRY | EDUCATION |
| 19. YEARS IN OCCUPATION | 20 |

### USUAL RESIDENCE

| Field | Value |
|---|---|
| 20. DECEDENT'S RESIDENCE | 7656 NORTH HAYSTON |
| 21. CITY | FRESNO |
| 22. COUNTY/PROVINCE | FRESNO |
| 23. ZIP CODE | 93720 |
| 24. YEARS IN COUNTY | 23 |
| 25. STATE/FOREIGN COUNTRY | CA |

### INFORMANT

| Field | Value |
|---|---|
| 26. INFORMANT'S NAME, RELATIONSHIP | PAUL KORDESTANI, SON |
| 27. INFORMANT'S MAILING ADDRESS | 2471 WEST SAMPLE AVENUE, FRESNO, CA 93711 |

### SPOUSE/SRDP AND PARENT INFORMATION

| Field | Value |
|---|---|
| 28. NAME OF SURVIVING SPOUSE/SRDP – FIRST | PARVANEH |
| 30. LAST (BIRTH NAME) | KAMANGAR |
| 31. NAME OF FATHER/PARENT – FIRST | SHOKROLAH |
| 33. LAST | KORDESTANI |
| 34. BIRTH STATE | IRAN |
| 35. NAME OF MOTHER/PARENT – FIRST | ZIBANDEH |
| 37. LAST (BIRTH NAME) | RASHIDIAN |
| 38. BIRTH STATE | IRAN |

### FUNERAL DIRECTOR / LOCAL REGISTRAR

| Field | Value |
|---|---|
| 39. DISPOSITION DATE | 07/29/2020 |
| 40. PLACE OF FINAL DISPOSITION | CLOVIS CEMETERY, 305 NORTH VILLA AVENUE, CLOVIS, CA 93612 |
| 41. TYPE OF DISPOSITION(S) | BU |
| 42. SIGNATURE OF EMBALMER | STEPHEN BASTIAN |
| 43. LICENSE NUMBER | EMB9347 |
| 44. NAME OF FUNERAL ESTABLISHMENT | BOICE FUNERAL HOME |
| 45. LICENSE NUMBER | FD503 |
| 46. SIGNATURE OF LOCAL REGISTRAR | RAIS VOHRA, MD |
| 47. DATE | 07/27/2020 |

### PLACE OF DEATH

| Field | Value |
|---|---|
| 101. PLACE OF DEATH | RESIDENCE |
| 103. IF OTHER THAN HOSPITAL | Decedent's Home |
| 104. COUNTY | FRESNO |
| 105. FACILITY ADDRESS OR LOCATION WHERE FOUND | 7656 NORTH HAYSTON |
| 106. CITY | FRESNO |

### CAUSE OF DEATH

| Field | Value | Time Interval |
|---|---|---|
| 107. IMMEDIATE CAUSE (A) | CARDIOPULMONARY ARREST | IMM |
| (B) | METASTATIC PROSTATE CANCER | 5 YRS |
| 108. DEATH REPORTED TO CORONER? | YES — Reference Number 20-07-331 | |
| 109. BIOPSY PERFORMED? | NO | |
| 110. AUTOPSY PERFORMED? | NO | |
| 111. USED IN DETERMINING CAUSE? | — | |
| 112. OTHER SIGNIFICANT CONDITIONS | NONE | |
| 113. WAS OPERATION PERFORMED | NO | |

### PHYSICIAN'S CERTIFICATION

| Field | Value |
|---|---|
| 114. Decedent Attended Since | 08/21/2019 |
| Decedent Last Seen Alive | 02/11/2020 |
| 115. SIGNATURE AND TITLE OF CERTIFIER | ARSHAD AHAD M.D. |
| 116. LICENSE NUMBER | C144051 |
| 117. DATE | 07/24/2020 |
| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE | ARSHAD AHAD M.D., 7300 NORTH FRESNO STREET, FRESNO, CA 93720 |

### CORONER'S USE ONLY

(blank)

**STATE REGISTRAR:** *010001004607647*

---

### CERTIFIED COPY OF VITAL RECORDS
STATE OF CALIFORNIA, COUNTY OF FRESNO

This is a true and exact reproduction of the document officially registered and placed on file in the Vital Records Section, Fresno Co. Department of Public Health.

**DATE ISSUED:** JUL 27 2020


RAIS VOHRA, M.D.
FRESNO COUNTY LOCAL REGISTRAR



*001333514*

This copy not valid unless prepared on engraved border displaying date, seal and signature of Registrar.

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

**EXHIBIT**

**A**



**J. THOMAS EPPERSON**
CERTIFIED PUBLIC ACCOUNTANT

5575 Lake Park Way Suite 2110
La Mesa, CA 91942
(949) 246-8770
epperjt@gmail.com

July 16, 2020

Mr. Harrision Kordestani, Esq.
Attorney at Law

Valuation of Mortgage Note secured by property located at 7805 Colony Lake Drive, Boynton Beach, FL as of July 15, 2020.

### Loan Level Characteristic

| | |
|---|---|
| Original Loan Amount: | $296,100.00 |
| Program: | Conventional 30 years fixed |
| Property Type: | SFR-PUD |
| Loan Term: | 360 months |
| Date of Note: | 1/11/2018 |
| FICO Score: | 730 at the time of Note |
| Appraised Value: | 329,000.00 |
| Loan to Value: | 90% |
| DTI Ratio: | 47.26% |
| First Payment Date: | 3/1/2018 |
| Mortgage Insurance: | Yes |
| MI Insurer: | MGIC |
| MI Certificate# | 29973892 |
| Current Pay-thru date: | 3/1/2020 |
| Current Principal Balance: | unknown |
| Current Status: | Loan Forbearance due to COVID-19 |
| Comment: | No loan servicing records available for review. |

Based on the characteristic provided above, with limited servicing record and loan currently in forbearance, it is opinion of this firm the value of the Note is approximately $230,300 based on 70% of original value of the property.

*John T. Epperson, CPA*

**EXHIBIT**

**B**


P.O. Box 970
Goodlettsville, TN 37072
(888) 595-9536 ▪ (615) 859-2238 Fax
www.kirklandgroup.net

July 16, 2020

Craig Chang, Partner
Swansea Investment Group, Inc.
1 Bethany Road, Building 1, Suite 20
Hazlet Township, NJ 07730

Dear Mr. Chang:

Please accept this letter as confirmation of Kirkland Group's ("Kirkland") bid of 83.00% of the unpaid principal balance for the loans, on a service released basis, as listed on the attached – **"Exhibit A"**

Kirkland's bid is subject, but not limited to:

- In the event any loans are FHA insured, that the FHA Insurance has been or will be removed from the loans and upfront and monthly MI amounts have been or will be refunded to the borrower.
- Images of complete credit files being supplied to Kirkland for review including HUD 1, Final Loan Application, Good Faith Estimate, and Final Truth in Lending
- Images of complete collateral files being supplied to Kirkland for review including Original Notes and all indorsements/allonges, Original or County Certified Recorded Mortgages/DOTs, and all recorded or unrecorded assignments, and final title policies
- Kirkland obtaining independent valuations to substantiate the values used for the indicative bid
- Life of Loan Payment History
- 24 months' Account officer comments/servicing notes being supplied to Kirkland for review
- Seller providing proof of insurance (declaration page)
- Seller providing accurate status of the loans relating to foreclosure, bankruptcy etc.
- No loans being considered for a modification
- The loans being materially as disclosed
- No delinquent real estate taxes or other liens, assessments, or judgments. If there are delinquent real estate taxes or other liens, assessments, or judgments that would attach to the real estate, seller agrees to net those from the proceeds. This can include HOA fees, mechanics' liens, water/sewer/municipal liens.
- Negotiation of a mutually acceptable Purchase and Sale Agreement



P.O. Box 970
Goodlettsville, TN 37072
(888) 595-9536 ▪ (615) 859-2238 Fax
www.kirklandgroup.net

Kirkland close the transaction within 30 days of all deliverables. **Seller represents that neither it nor any agents of seller or predecessors in interest has entered into any form of COVID-19 related forbearance agreement, payment deferral agreement, modification or any other form of payment relief.**

Sincerely,

Chris Climer, Senior Acquisitions Manager
Kirkland Group

AGREED AND ACCEPTED

By

Craig Chang, Partner
Swansea Investment Group, Inc.


P.O. Box 970
Goodlettsville, TN 37072
(888) 595-9536 • (615) 859-2238 Fax
www.kirklandgroup.net

## EXHIBIT A

| Loan ID | Borrower | Address | City | State | Zip | UPB | Next Due | Rate | P&I | PP$ | PP% |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1000053203 | Nguyen | 7805 Colony Lake Dr | Boynton Beach | FL | 33436 | $284,853.56 | 7/1/2020 | 4.625% | $1,522.37 | $236,428.45 | 83.00% |